### DAVIS, Director General of Railroads, v. SMUTZINGER et al.

(Circuit Court of Appeals, Third Circuit.  June 27, 1922.)

#### No. 2799.

1. **Carriers** ☞196—Notice to shipper of consignee's refusal to accept goods required in statement of claim for demurrage.

In action by carrier against shipper for a deficiency resulting after deducting price for which carrier sold the coal shipped from the amount claimed for freight and demurrage, where it did not appear in the statement of the claim that carrier notified shipper of consignee's refusal, as required by the demurrage rules, under the conformity section of the Revised Statutes (Comp. St. § 1537), in view of Pennsylvania Practice Act 1915, §§ 5, 20 (P. L. 483; Pa. St. 1920, §§ 17185, 17200), the statement of the claim was insufficient.

2. **Carriers** ☞197(7)—Shipper entitled to notice of time and place of sale for charges.

A shipper of goods is entitled to notice of the time when and the place where the goods are to be sold to pay carriage and storage charges.

3. **Pleading** ☞8(2)—Stating conclusions of pleader, rather than ultimate facts, held insufficient.

Where the statement of claim, in an action by carrier against shipper for deficiency resulting after deducting price for which carrier sold the coal shipped from the amount claimed for freight and demurrage, alleged that the coal was refused by consignee and it was necessary for carrier to sell it, as shipper, after notice, had failed to give orders, and that the selling price was the highest amount which could be obtained at public sale after notice, was defective, in that it stated the pleader's conclusions, rather than the ultimate facts.

4. **Jury** ☞31(7)—Entering judgment for failure to properly frame issues not violation of right to jury trial.

The method of requiring parties to frame their issues by proper affidavits, and of entering judgment in default of proper affidavits, is not a violation of the right to jury trial.

5. **Carriers** ☞188—Shipper entitled to rely on general order of Director of Railroads to sell goods before freight and demurrage charges exceeded their value.

A shipper was entitled to rely on a railroad selling goods pursuant to a general order of the Director of Railroads before the freight and demurrage charges equaled or exceeded their value.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by James C. Davis, Director General of Railroads, as Agent, against Jacob Smutzinger and another, copartners doing business under the firm name of the Smutzinger Coal Company.  Judgment for defendants, and plaintiff brings error.  Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. H. Oliver, of Scranton, Pa., and Theo. L. Wilson, of Clarion, Pa., for plaintiff in error.

A. M. Liveright, of Clearfield, Pa., for defendants in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

PER CURIAM. In the court below the Director General of Railroads sued the defendants for freight on ten carloads of coal which they had shipped, and which were not accepted by the consignee. The freight on the shipment amounted to some $4,400, and the coal was sold for some $370, and this suit was brought to recover the difference, some $4,100. The defendant filed an affidavit of defense, raising, under the Pennsylvania practice, the question of law as to the legality of the disposition of the coal by the sale. The court decided the question thus raised, and entered judgment in favor of the defendants. From this the present appeal was taken.

The entire history of the case and the reasons which led the court below to make the order complained of, are fully set forth in its first opinion on the pleadings as originally filed, and on its reconsideration after an amended statement had been filed. We find no error in the conclusions reached by the late Judge Orr, and accordingly affirm the case on his opinions:

### Opinion sur Question of Law Raised by Affidavit of Defense.

[1] This is an action of assumpsit, brought by the plaintiff against the defendant to recover from the latter the sum of $4,082.97, with interest from the 22d day of May, 1919, which the plaintiff avers is a balance of freight and demurrage charges upon ten carloads of coal. This balance is arrived at by deducting from a gross aggregate of diverse freight and demurrage charges the gross amount received from the sale by the plaintiff of the ten cars of coal at the rate of 50 cents per ton. The question as to the sufficiency of the plaintiff's statement of claim is raised by the affidavit of defense in accordance with the provisions of the Pennsylvania Practice Act of 1915 (P. L. 483; Pa. St. 1920, §§ 17181–17204).

Section 5 of that act (Pa. St. 1920, § 17185) provides: "Every pleading shall contain, and contain only, a statement in a concise and summary form of the material facts on which the party pleading relies for his claim * * * but not the evidence by which they are to be proved, or inferences or conclusions of law, and shall be divided into paragraphs numbered consecutively, each of which shall contain but one material allegation," etc.

Section 20 of that act (Pa. St. 1920, § 17200) provides: "The defendant in the affidavit of defense may raise any question of law, without answering the averments of fact in the statement of claim; and any question of law, so raised, may be set down for hearing, and disposed of by the court. If in the opinion of the court the decision of such question of law disposes of the whole or any part of the claim, the court may enter judgment for the defendant, or make such other order as may be just," etc.

Under the conformity section of the Revised Statutes (Comp. St. § 1537), the provisions of that act, at least in so far as such provisions have been hereinabove quoted, are binding upon this court. Before taking up the plaintiff's statement, it is well to note that the defendants have set forth in their affidavit of defense a number of reasons in support of their objection that the statement of claim does not set forth a proper cause of action. It is unnecessary to detail all of them, because the insufficiency of the plaintiff's statement of claim is the foundation upon which each of them rests.

Taking up the statement of claim, we find in the first and second paragraphs a description of the plaintiff and defendants and the character in which the

former sues, and in which the latter are called upon to make defense. In the third paragraph we find the averment that on March 25, 1919, the defendants shipped ten cars of bituminous coal from Hawk Run, Pa., consigned to the Seaboard By-Product Company, Seaboard, N. J., said coal to be transported to Secaucus, N. J., its destination. It is also averred in that paragraph that the coal remained at Secaucus until various dates during May, 1919. The fourth paragraph of the statement contains the averment that the plaintiff had filed with the Interstate Commerce Commission certain tariffs, specifying freight and demurrage charges upon shipments of commodities between the aforesaid points of origin and destination, as required by the various acts of Congress which are referred to. That paragraph also gives the various numbers of the tariffs, and contains the averment that the same were posted and that copies were kept open for the inspection of the public, and that copies of the said tariffs are made a part of the said statement of claim. The following are the fifth and sixth paragraphs of the statement:

"Fifth. Upon arrival at Seaboard, N. J., the said coal was refused by the Seaboard By-Product Company, and it was necessary for the plaintiff to sell the same in order to dispose of the property, inasmuch as the defendants after notice had failed to give orders for disposition of the same. This sale took place on or about the 22d day of May, A. D. 1919.

"Sixth. The amount of freight and demurrage charges, together with the federal war tax added, due in accordance with the tariffs aforesaid upon the aforesaid cars of coal, is $4,454.03; the demurrage being assessed on account of the cars being placed during April, A. D. 1919, and released during May, A. D. 1919. The character, quantity, and description of said shipment, and the freight and demurrage charges as provided by said tariffs, together with general war tax, and also with the dates of arrival and disposition of the said coal at destination, are shown in detail on statement hereto attached and hereby made a part hereof, marked 'Exhibit E.'"

The seventh paragraph contains the following averment: "The amount realized by the plaintiff from the sale of said coal is $371.06, being the highest amount which could be obtained at public sale after due notice. The difference between the aggregate amount of freight and demurrage charges and the amount realized from the sale is $4,082.97."

It is plain from the foregoing that the plaintiff proceeded upon the theory that the carrier has a lien upon the merchandise for the aggregate of the freight and demurrage charges, and that therefore in the instant case the carrier had a right to enforce a lien for the freight and demurrage charge upon the coal shipped in the past by the defendants, and that to enforce such lien he had the right to sell the subject of the lien and apply the proceeds of the sale to the reduction of the amount of the claim and sue the consignor to recover the balance therefor.

Assuming, for the purposes of this case, that the carrier had a lien for both freight and demurrage, we are satisfied that there were certain conditions precedent to be performed by the carrier, before demurrage would begin to run and before a sale of the coal should be had, and therefore a liability could be imposed upon the consignor. Referring now to the car demurrage rules attached to plaintiff's statement, we find it provided in rule 3, section (c): "On cars held for unloading time will be computed from the first 7 a. m., after placement on public delivery tracks and after the day on which notice of arrival is sent or given to consignee." If the siding referred to in the statement of claim, upon which the coal was delivered, was a public delivery track, then under that rule two conditions are required to be performed before demurrage should begin to run, to wit, not only placement, but that notice of arrival should be sent or given.

In rule 4, section (a), it is provided: "Notice shall be sent or given consignee by carrier's agent in writing, or as otherwise agreed to by carrier and consignee, within 24 hours after arrival of cars and billing at destination; such notice to contain point of shipment, car initials and numbers, and the contents, and, if transferred in transit, the initials and number of the original car. In case car is not placed on public delivery track within 24 hours after notice of arrival has been sent or given, a notice of placement shall be sent or given to consignee."

Again, section (c) of rule 4 provides: "Delivery of cars upon private or industrial interchange tracks, or written notice sent or given to consignee of readiness to so deliver, will constitute notification thereof to consignee." And section (d) of the same rule provides: "In all cases where notice is required, the removal of any part of the contents of a car by the consignee shall be considered notice thereof to the consignee."

The statement of claim is wholly silent as to what, if any notice was given to the consignee of the arrival of the cars, as provided in the demurrage rules. Is the statement, Exhibit E, attached to the affidavit of claim, sufficient therefor when it merely gives the time when the cars were placed? Rule 5 relates to the placing of cars for unloading, especially with respect to the difficulty of the placement. Neither section of said rule is material in the consideration of this question, except in so far as each provides for written notice to the consignee. It is plain, therefore, that there must be some written notice of arrival, or what is equivalent to such notice under the rules, before demurrage can begin to run.

Rule 7 is the rule setting forth the demurrage charge. In the parallel column with the rule are instructions and explanations. We find under the latter: "(b) Freight upon which charges have accrued under these rules shall not be removed from railroad premises until charges thereon have been paid. When consignor or consignee refuses to pay, agent will hold freight until payment is made, and continue to charge until freight is removed, or at his option may send freight to public warehouse or yards, where the same will be held subject to storage charges and all other charges." The foregoing section of instructions shows that there must be a refusal of both consignor and consignee to pay charges, to authorize the agent to hold freight. It is difficult to see how there can be a refusal to do a thing until there has been a request that it should be done. If the consignee refuses to pay, how is the consignor to know of such refusal, and his liability for demurrage, without notice of such matter?

[2] Having touched upon the conditions precedent necessarily to be performed, before demurrage charges can be collected, let us consider what other conditions precedent should be performed before a lienor can sell the property subject to the lien, in the absence of specific agreement relating to such sale. It is plain that the owner of the merchandise should have notice of the time and place of sale, in order that he might have an opportunity of protecting his property. There does not appear in the statement of claim any allegation that the defendants were notified of the time and place at which the plaintiff intended to sell the coal to answer the claims against it. Indeed, there is no averment of fact in the statement as to what notice was given to anyone of the proposed sale, and the identity of the purchaser or purchasers is not disclosed. But it is urged that objections to the manner of sale and to the sufficiency of notice are matters of defense, and are not necessary to be set forth in the statement of claim. In a case of this kind, where a carrier is suing for freight and demurrage, the carrier must disclose what has become of the merchandise intrusted to him by the shipper, and must set forth the facts which show a proper disposition of such merchandise. This the plaintiff has failed to do.

[3] It is elementary that pleadings must state facts, and not conclusions of law merely. As stated in 5 Standard Encyc. of Procedure, 205: "A pleading is primarily and essentially a statement of facts, and it is the province of the court to draw therefrom such conclusions as may be proper. It follows, therefore, as an elementary rule of pleading, that allegations of conclusions of law are improper and generally are of no avail in stating a cause of action or defense." In the work above mentioned, many cases are collected in the notes, and many instances of objectionable general allegations are given. Almost any encyclopedia of procedure or work on pleading will support the language hereinabove quoted.

Referring now to the fifth paragraph of the statement, we find this averment: "Said coal was refused by the consignee. It was necessary for the plaintiff to sell the same in order to dispose of the property, inasmuch as the defendants, after notice, had failed to give orders." The facts are not set forth from which can be found a refusal by the consignee to take. The facts

are not set forth as to why it was necessary for the plaintiff to sell; when notice, if any, was given to the defendants; what was the form of the notice; to what person was notice given.

Turning to the seventh paragraph, we find the sum of $371.06 averred to be the amount realized by the plaintiff from the sale, and to be the highest amount which could be obtained at public sale after due notice. Was this sale held at a proper time? Was it public, or was the price merely such price as could have been "obtained at a public sale after due notice"? If the sale was public, what notice to the public was given, and what notice to the consignors and consignee, if any? Where did the sale take place? Exhibit E contains a column headed "Reconsignment War Tax." Was there a reconsignment to some place convenient to the public, before sale?

I am satisfied that the statement of claim is insufficient, for at least two substantial reasons: First, that the statement does not contain sufficient averments of fact showing performance of conditions precedent to the right to assess the demurrage charge: and, second, because with respect to material matters the conclusions of the pleader are relied upon rather than upon averments of fact. The questions of law raised by the affidavit of defense, in so far as they have been dealt with in this opinion, must be decided in favor of the defendants.

### Supplemental Opinion sur Question of Law Raised by Affidavit of Defense.

[4] This court, on July 30, 1920, having filed an opinion deciding the question of law raised by the affidavit of defense in favor of the defendants, the plaintiff, with a view to overcoming the insufficiency of the statement of claim, filed an amended statement. Thereupon the defendants raised practically the same questions by an additional affidavit of defense as had been raised by their previous original affidavit of defense filed in answer to plaintiff's original statement. In the prior opinion we have already referred to the Practice Act of Pennsylvania and asserted its part in the administration of the law by the federal courts, in pursuance of the conformity section of the Revised Statutes of the United States. It is perhaps well to note also that the method of requiring parties to frame their issue by means of proper affidavits and of entering judgment in default of proper affidavits is not in derogation of the right of trial by jury. Fidelity & Deposit Co. of Md. v. United States, 187 U. S. 315, 23 Sup. Ct. 120, 47 L. Ed. 194.

The plaintiff's amended statement of claim must be deemed insufficient to sustain a judgment in his favor. As was briefly pointed out in the previous opinion, an action by a carrier against a consignor to recover freight and demurrage charges is an action upon a contract. The agreement on the part of the consignor, who delivers merchandise to the carrier without the prepayment of the charges, is that he will pay all proper charges for the carriage of the merchandise. The agreement upon the part of the carrier is that it will safely deliver the merchandise or otherwise dispose of the same according to law.

[5] In the case at bar, the defendants delivered to the carrier ten carloads of coal without, at the time, prepaying the freight. The carrier received this said coal, thereby agreeing to deliver it to the consignee, or otherwise dispose of it according to law. Both parties must have known what provisions of law should govern, where the consignee refused to receive merchandise. Those provisions of law were set forth, not only in the tariffs, but in the general orders of the Director General of Railroads and of others having authority to issue orders for the government of railroads and their employees. The statement of claim in this case sets out a general order of W. G. McAdoo, then Director General of Railroads, No. 34–A. That order provides that carriers subject to federal control should "sell at public auction to the highest bidder * * * freight which has been refused * * * after the same has been on hand 60 days."

The statement of claim avers that A. H. Smith, Regional Director of Railroads, issued an amendment to said general order of which the following is a portion: "The provision that shipments shall be sold after remaining on hand sixty (60) days after notice of arrival is given consignees is not intended, how-

ever, to necessitate roads holding such commodities, as referred to, in cars sixty (60) days, nor until freight and demurrage charges may equal or exceed the sale value of the shipments. Carriers have first lien on freight shipments for freight and other lawful charges, as provided in tariff publications. It follows that such revenues should be protected and should not be dissipated through permitting their accrual in amount to exceed the value of the shipments. The alternative is obvious. In some cases it will be found desirable for the road to take over the property for its own use and make fair settlement with the owner. In some cases best interest of all concerned may prompt the sale of shipments by carriers to best possible advantage and for account of whom it may concern. In other cases it may be necessary to unload the property in the best available space, even on the ground pending disposition."

It is apparent from the statement of claim that the plaintiff did not com ply with the provisions of said general orders. A public sale of the coal was a condition precedent to the right to recover in this case. The defendant had a right to rely upon the general order (even if the defendants had notice of the refusal by the consignee of the coal) that the railroad company would not allow the freight and demurrage charges to exceed the value of the shipment. The plaintiff says in his statement of claim that he did not find the name and address of the shipper until April 29th. Even in plaintiff's notification at that time, there was no specific date fixed for receiving orders for the disposition of the merchandise.

Upon the argument of the question as to the sufficiency of the amended statement of claim, plaintiff relied upon the case of Pennsylvania Railroad Co. v Whitney & Kemmerer, 73 Pa. Super. Ct. 588. That case is interesting, but not, as plaintiff urged, an authority which should move this court to decide the question of law in favor of the plaintiff. In that case the consignor was notified by the railroad company of the refusal by the consignee of coal, and in response to such notice the consignor, who was the defendant in the case and justly held answerable to the railroad company for want of a sufficient affidavit of defense, promptly notified the railroad company that they would have nothing to do with the merchandise. That certainly appears to have been a complete disclaimer of ownership. Nothing like that appears in the case at bar. The defendants, at the time, had a right to rely upon the presumption that the plaintiff would comply with the law and the rules above mentioned, and they have the right now to insist that, because the plaintiff has not performed the conditions precedent to his right to maintain this action, which we have above pointed out, the statement of claim is insufficient.

The questions of law raised by the affidavit of defense, in so far as they have been dealt with in this opinion, as well as in the opinion filed July 30, 1920, must be decided in favor of the defendants.